**ST. LOUIS, SAN FRANCISCO AND TEXAS RAILWAY COMPANY, Appellant,**

v.

**RAILROAD YARDMASTERS OF AMERICA, AFL–CIO, Appellee.**

No. 20570.

United States Court of Appeals
Fifth Circuit.
March 4, 1964.

Judge Gambill, Fort Worth, Tex., Ernest Grinnell, Jr., Paul R. Moody, St. Louis, Mo., Martin M. Lucente, Chicago, Ill., Robert E. Burns, Dallas, Tex., Harry McCall, Jr., Chaffe, McCall, Phillips, Burke, Toler & Hopkins, New Orleans, La., Allen, Gambill & Gambill, Fort Worth, Tex., Burford, Ryburn & Ford, Dallas, Tex., Sidley, Austin, Burgess & Smith, Chicago, Ill., for appellant.

Charles J. Morris, Dallas, Tex., Mullinax, Wells, Morris & Mauzy, Dallas, Tex., of counsel, for appellee.

Before TUTTLE, Chief Judge, and HUTCHESON and GEWIN, Circuit Judges.

TUTTLE, Chief Judge.

On October 8, 1962, the appellant Railroad notified its four yardmasters at Fort Worth, Texas, that the positions of yardmaster would be abolished at the end of their respective tours of duty beginning on October 10, 1962.[1]

On October 10, 1962, the appellee filed a complaint seeking to enjoin the carrier from proceeding with its announced intention. The trial court granted an ex parte temporary restraining order and then, rather than having the case set down for a hearing for preliminary injunction, the parties consented to permit

1. Typical of these notices is the following:
> Fort Worth, October 8, 1962
> Mr. J. R. Joblin
> General Yardmaster
> Fort Worth, Texas
> Effective with end of tour of duty Wednesday, October 10, 1962, General Yardmaster Position, Fort Worth, Texas, is abolished.
> /s/ R. A. Rorie

the restraining order to stay in effect until a hearing was had on the merits on a permanent injunction. Upon such hearing the trial court granted the permanent injunction as prayed for. The carrier has appealed.

The basis for the complaint as found by the trial court was its allegation that the carrier's action violates Section 2, First and Seventh, and Section 6 of the Railway Labor Act relating to proposed changes in agreements governing rates of pay, rules, and working conditions. Section 6 of the Railway Labor Act provides in pertinent part:

"Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. * * * In every case where such notice of intended change has been given, * * * rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by Section 5 of this Act * * *".

The Union contended that under the terms of this provision the carrier could not unilaterally take the contemplated action until it had complied with Section 6 and processed the bargaining on the proposal in accordance with the provisions of the Act relating to bargaining.

The carrier's answer to the complaint was relatively simple and uncomplex. It asserted simply that in pursuing the action complained of it was acting strictly within the terms of the existing agreement with the Union which, by Rule 15, provides:

"Yardmasters will be given 48 consecutive hours advance notice of reduction in force with copy to General and Local Chairman."

and by Rule 16(e), provides:

"This agreement shall not be construed as an obligation to maintain or establish yardmasters' positions, nor as restricting the Company's right to discontinue yardmaster positions now or hereafter established."

The carrier was doing, so it said, what the contract authorized it to do and it was not doing what the Union said it was, to-wit: Seeking or proposing "an intended change in *agreements* affecting rates of pay, rules, or working conditions." So it is, that the carriers take the position that rather than being off base by not proceeding under Section 6 seeking to bargain for a change in existing agreements, it was strictly in line by acting under the existing contract and that it was in fact the Union that was off base in going to court to litigate the issue rather than pursuing grievance procedures by challenging the right of the carrier to abolish the positions under the terms of the existing contract and referring the issue to the Railroad Adjustment Board which the carrier contends has exclusive jurisdiction where a contract interpretation is involved.

At the injunction hearing the trial court received evidence tendered by the Union undertaking to show that the abolition of the jobs in Fort Worth was but one step in a proposal to abolish all yardmaster jobs or "classifications." However, the trial court, although finding that the proposed terminations in Fort Worth were part of a plan by the carrier to abolish all yardmaster jobs on the system and transfer the work theretofore having been performed by the yardmasters to other personnel and to mechanical equipment, stated that its finding and conclusion would be the same were there only the Fort Worth jobs involved.

■ The parties seem agreed on one proposition. That is, certain types of disputes arising between carriers and

their employees may be of such a nature that the Railroad Adjustment Board has exclusive jurisdiction over them. In such case a suit may not be filed in the courts until after the procedures provided for under the Act are complied with. Probably more for convenience than anything else, the disputes in this category have been classified by the courts as "minor" disputes. Another point of agreement between the parties is that there are other disputes or issues that may arise between carriers and their employees as to which the first approach must be made to the other party to the dispute in order to commence conferences which must thereafter be pursued through the Mediation Board if either party requests it, all as set out in Section 5 of the Act. Disputes of this nature are probably, likewise for convenience, known as "major" disputes.

 While the parties are as far apart as the poles in their contentions as to whether the issue before us is a minor or a major dispute, the courts have frequently discussed the two categories. Also, reference to the language of Section 6, quoted above, is itself fairly clear in that it requires the bargaining procedure only where there is an intended change *in agreements* affecting rates of pay, rules, or working conditions. Obviously, therefore, if there is no intended change in an existing contract or agreement there is no requirement under Section 6 that the bargaining procedures be followed.

In discussing the nature of disputes dealing with the rights of the parties between carriers and employees, the Supreme Court in Elgin, Joliet & Eastern Railway Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886, said:

> "The first relates to disputes over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore *the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.*
>
> "*The second class, however, contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one.* The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case. In the latter event the claim is founded upon some incident of the employment relation, or asserted one, independent of those covered by the collective agreement, e. g., claims on account of personal injuries. In either case the claim is to rights accrued not merely to have new ones created for the future.
>
> "In general the difference is between what are regarded traditionally as the major and the minor disputes of the railway labor world." (Emphasis added.)

See also Order of Railway Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318.

This Court had occasion to deal with this problem in Missouri-Kansas-Texas Railroad Company et al v. Brotherhood of Locomotive Engineers et al, 5 Cir., 266 F.2d 335. In deciding that the challenged conduct in that case which involved changing the assignments of employees in freight service, changing terminals in that class of service, and abolishing a number of positions, this Court said:

> "Without intimating any view as to their validity, we think it clear that the respective *contentions* of the Railroad Companies and of the employees are based upon existing agreements; their *claims* are to rights accrued and not to have new rights created for the future. The dispute is thus a 'minor' dispute, the resolution of which is committed

to the National Railroad Adjustment Board. Primary jurisdiction of that Board cannot be defeated by the emphasis with which any party asserts that its position is clearly the only rightful one, nor would it be appropriate for this Court to discuss the relative merits of questions which must be decided by that Board." 266 F.2d at 340.

It seems clear that the appellee has fallen into the error of assuming that whenever an issue arises between the carrier and the Union relating to "rates of pay, rules, or working conditions" then Section 6 must be invoked. In its brief the appellee says, "if, as in the instant case, the court's preliminary interpretation of the contract reveals that the dispute is over a change in 'rates of pay, rules, or working conditions,' * * * then it is incumbent upon the court to retain jurisdiction, * * *" as for the solution of a "major" dispute. So, too, the trial court in its carefully considered opinion seems to have concluded that the *effect* of the proposed conduct, even though authorized by contract, was of such major significance that it must be deemed a "major" dispute. It is clear that in solving the problem presented to it, the trial court actually construed the language of Rule 16(e) as not authorizing the discontinuance of the yardmaster positions, thus clearly demonstrating that it was rejecting the carrier's *construction* of the contract of employment.

Unless we are to ignore completely the language of Rule 16(e) which on its face, according to the ordinary understanding of the English language does authorize the abolition of yardmaster positions, we are at a loss to understand how it could be decided that the rights of the Union can be determined without a construction of the employment contract or agreement. We do not, of course, any more than did we in the M-K-T case supra, attempt to construe the contract. This is to be done by the appropriate tribunal. We do say that a defense based upon the language of Rule 16(e) raises a substantial issue as to the interpretation of the contract. It is not a fictitious or merely colorable issue. Before a tribunal can decide that the terminations at issue were not justified, it must construe the language of Rule 16(e).

Appellee strongly stresses the Supreme Court cases, Order of Railroad Telegraphers v. Chicago & Northwestern R. Co., 362 U.S. 330, 80 S.Ct. 761, 4 L.Ed.2d 774 and Brotherhood of Locomotive Engineers v. Baltimore & Ohio Railroad Co., 372 U.S. 284, 83 S.Ct. 691, 9 L.Ed. 2d 759, in support of its argument to the effect that this is a major dispute. We find no support for their position in these cases. Nor do we find any tendency on the part of the Court to depart from the traditional concepts of major and minor disputes. Discussing the applicability of the Norris-LaGuardia anti-injunction statute in the Railroad Telegraphers case the Court said:

"Plainly the controversy here relates to an effort on the part of the union to change the 'terms' of an existing collective bargaining agreement."

362 U.S. 330 at page 336, and at page 341, 80 S.Ct. at p. 764 and at page 767, the Court said:

"But it is impossible to classify as a minor dispute this dispute relating to a major *change*, affecting jobs, *in an existing collective bargaining agreement*." (Emphasis added)

That the dispute in the Brotherhood of Locomotive Engineers case deals with a change in *"agreements* affecting rates of pay, rules, and working conditions" is plain from a reference to the opinion of the Court of Appeals in that case. See 310 F.2d 503, 506 (7 Cir.).

It is plain here that the dispute raised by the complaint could be resolved only by construing the existing contract. It follows that the trial court erred in entertaining jurisdiction of the suit. The appellee should have been remanded to

754

the grievance procedures set forth in the contract.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.