AAXICO AIRLINES, INC., Appellant,

v.

AIR LINES PILOTS ASSOCIATION, IN-
TERNATIONAL, et al., Appellees.

No. 20931.

United States Court of Appeals
Fifth Circuit.

April 15, 1964.

Rehearings Denied July 10, 1964.

A. W. Worthy, San Antonio, Tex.
(Boyle, Wheeler, Gresham, Davis &
Gregory, San Antonio, Tex., of counsel),
for appellant.

Charles J. Morris, Dallas, Tex., Maury
Maverick, Jr., San Antonio, Tex., Henry
Weiss, New York City (Mullinax, Wells,
Morris & Mauzy, Dallas, Tex., Cohen &
Weiss, New York City, Maverick, Tynan
& Gochman, San Antonio, Tex., of coun-
sel), for appellees.

Before TUTTLE, Chief Judge, and
RIVES and WISDOM, Circuit Judges.

TUTTLE, Chief Judge.

This appeal raises the question wheth-
er the trial court had jurisdiction to con-
strue what it found to be a subsisting
agreement and to grant an injunction re-
quiring the appellant to carry out the
terms of such agreement as construed by
the trial court.

The contest between the parties arose
in the following manner:

Aaxico had for several years conducted
an air transportation business with the
use of C–46 aircraft on the basis of con-
tracts with the United States Govern-
ment. Beginning on June 16, 1956,
Aaxico and ALPA had been parties to a
collective bargaining agreement covering
the employees flying its aircraft. The
most recent of the collective bargaining
agreements between the parties became

effective on January 1, 1960. It provided that it was to continue in full force and effect until June 30, 1961, "and thereafter until each succeeding June 30, unless written notice of intended change is served in accordance with Section 6, Title 1 of the Railway Labor Act by either party thereto at least 60 days prior to June 30, 1961, or June 30 of any succeeding year."[1] Prior to the expiration date of this last agreement, and without any specific written notice "of an intended change in agreements affecting rates of pay, rules or working conditions," on the occasion of Aaxico's losing its Logair (Government) contract as of June 30, 1960, and the leasing by it of approximately 25 C-46 aircraft to Capitol Airways, which company acquired the Logair contract from the Government, Aaxico furloughed all of its approximately 221 pilot employees by giving them two weeks' notice as required under the agreement. The notice contained the statement, "we cannot, at this time, see any possibility of a resumption of our Logair flying but if any change should take place you will be promptly notified."

Thereafter, although Aaxico had no other air transportation business to carry on until it was able to obtain further or new contracts, it did not dissolve but maintained a skeleton organization principally engaged in seeking new contracts including an effort to bid on the following year's Logair contract.

On October 17, 1960, during the stated life of the contract, Aaxico wrote to ALPA as follows:

"Aaxico Airlines has suspended service in all forms of air transportation. We operated our last flights in early July of 1960 and have not had any pilots in our employ since that date.

"On December 7, 1959 an Agreement and various Letters of Agreement and a Supplemental Agreement

were signed between Aaxico Airlines, Inc. and The Air Line Pilots in the service of Aaxico Airlines, Inc. as represented by The Air Line Pilots Association International.

"This letter is to advise that the subject matter of the agreements listed in the Paragraph above no longer exists and therefore Aaxico Airlines considers these agreements terminated and of no further legal force and effect."

Appellee replied on November 8, in part, as follows:

"We are not in a position to agree entirely with your statement. So long as AAXICO remains inoperative, this document lies dormant. In the event that operations of the Company are resumed, however, within the period in which AAXICO pilot employees have job tenure under this Agreement, this Association would require their reemployment by the Company."

This letter from Aaxico and the reply by ALPA had clearly created the first dispute between the parties. If this dispute was referable to a construction of the terms of the then existing contract, the procedure required by the Railway Labor Act was that the aggrieved party should have then filed a grievance and processed it through the System Board of Adjustment. If, on the other hand, this amounted to the thirty days' written notice contemplated by Section 6 of Title 1 of the Railway Labor Act of "an intended change in agreements affecting rates of pay, rules or working conditions," the parties were under obligation to arrange for the conference provided for in Section 6 of Title 1 and proceed through the Mediation Board until the negotiations for the new contract, or the change in the old contract, were exhausted.

Neither of these procedures was followed. Instead, after Aaxico obtained

---

1. Section 6, Title 1 of the Railway Labor Act is a provision relating to the change "in agreements affecting rates of pay, rules, or working conditions," and pro-vides for the processing of bargaining through the Mediation Board before proposed changes in such existing agreements can be put into effect.

new Government contracts, effective July 1, 1961, in the performance of which it used DC–6A aircraft, a type of aircraft different from that which had theretofore been used in the prior operation and as to which pilot qualifications are different and more stringent, the Airline proceeded to obtain pilots through two pilot supply companies which, for the purpose of this appeal, we can assume amounted to nothing more or less than a service agent for the employment of pilots by the Airline itself. However, prior to the actual commencement of operation, on June 28, 1961, appellee, without having made any further demand or request for arbitration or mediation under either provision of the Railway Labor Act, brought suit in the Florida State Courts against the appellant seeking a construction of the contract, a declaration of the rights, and enforcement of the contract.[2]

The next step chronologically was that on July 20, 1961, after appellant had begun DC–6A operations, appellee addressed a letter containing the following to the President of Aaxico:

"Pursuant to the Agreement between Aaxico Airlines, Incorporated and the air line pilots in its service, as represented by the Air Line Pilots Association, International, the pilots of Aaxico Airlines, Inc., hereby file this as a Group Grievance and request an investigation and hearing thereon. The grievance is based upon the Company's violation of the Agreement, specifically including Sections 13 and 24 thereof, by refusing to recall furloughed pilots."

Section 13 of the contract provides for seniority. Section 24 provides for the demotions and reduction of personnel.

The President of the appellant replied on July 27th as follows:

"As Airline Pilots Association International was advised on October 17, 1960, Aaxico Airlines considers that the agreement previously existing between Aaxico Airlines and the airline pilots in the service of Aaxico has been terminated. This company, therefore, could not possibly be in violation of such terminated agreement and your request for a hearing based upon an alleged group grievance is entirely out of line and, of course, cannot be considered by this company."

To this letter appellee replied on August 4th:

"I am in receipt of your letter of July 27, 1961 denying my request for a hearing relative to a group grievance dated July 20, 1961. Since this decision is unsatisfactory to the affected pilots, I hereby request an appeal hearing.

"It is requested that the Company send a copy of all hearing notices and decisions rendered in this case to the undersigned and to the Legal Department, Air Line Pilots Association, International, 55th Street and Cicero Avenue, Chicago 38, Illinois."

No action thereafter having been taken by either party relating to the matter of grievance, ALPA filed this suit on August 24, 1961.

The pleadings and proof adduced before the trial court presented the following issues:

(1) Did the loss by Aaxico of its sole air carriage contract, followed by the leasing of its planes to another airline and the furloughing of all of its pilots, and the complete suspension of its operations pending the obtaining of a new contract, either constitute a termination of the collective bargaining agreement then in effect or did it warrant Aaxico in treating it as terminated by its unilateral action?

(2) What tribunal is appropriate under the National Railway Labor Act to decide issue No. 1?

2. This suit was subsequently dismissed, but not until after this present action was brought in the federal court and appellant moved to stay this action pending a decision of the Florida State Court.

(3) If the agreement between Aaxico and ALPA remained in effect through the date of expiration, June 30, 1961, notwithstanding the circumstances mentioned in issue No. 1, were any of the rights of ALPA and its members under such agreement violated upon the occasion of Aaxico's reengaging in air carriage under the contracts it obtained to be effective July 1, 1961?

(4) If such rights were violated, what tribunal should make these determinations?

(5) Did the district court have jurisdiction over this controversy and, if so, to what extent?

The trial court held that the first issue was to be answered in the negative. It decided on the basis of the facts, which were undisputed so far as actually bear on *this* issue, that the loss of the Logair contract with the Government by Aaxico and its complete suspension of operations pending the negotiation of a future contract, which occurred approximately one year later, neither amounted to a termination nor did it justify Aaxico in terminating it unilaterally.

Thus, the trial court also answered the second issue. It decided that it was the proper tribunal to pass on this legal question.

The trial court also answered issue No. 3 by stating that it had jurisdiction to determine that under the contract there were certain rights both of ALPA and of its members that were violated when Aaxico hired new pilots, and paid them different rates of pay then provided for under the agreement and when it hired the new pilots without reference to the seniority and other provisions of the existing agreement.

The court, thus, also decided issue No. 4, partially, to the effect that it was the proper tribunal to determine what rights under the contract had been violated, but it also decided that there were certain other contract disputes that should be referred, following grievance procedures as outlined in the agreement, to the System Board of Adjustment.

Finally, the court answered issue No. 5, both by the action it took in resolving issues Nos. 1 and 3, but also by concluding that it had the power to require Aaxico to assure the setting up of a System Board of Adjustment in order that grievance procedures could be pursued as provided for under the Railway Labor Act.

We conclude that the jurisdiction of the court was considerably more limited than that which it exercised. To the extent that the trial court could find on the record before it that the appellant had failed to make available the grievance machinery in order to permit a reference to a System Board of Adjustment, and to the extent that the court could find that ALPA had not either acquiesced in or abandoned any rights which it may have had under the contract, if not terminated, it would be within the competence of the trial court to have required Aaxico to assure the availability of grievance procedures and a System Board of Adjustment. In point of fact, Aaxico did not appeal from that part of the trial court's order which required it to "join with plaintiff Air Line Pilots Association in establishing a System Board of Adjustment to function under said contract; and give effect to such System Board, as set out in the System Board Agreement of said contract."

This is another one of those cases which, when brought to court, poses the preliminary question whether the relief sought is relief which can appropriately be granted by the court or which, under the carefully considered scheme of the Railway Labor Act, must be resolved by the System Board of Adjustment. The answer to this question is found in determining whether the dispute is what has generally been recognized in cases arising between carriers and their employees as a "minor" dispute or a "major" dispute. This terminology, used by the Supreme Court in Elgin, Joliet & Eastern Ry. Co. v. Burley, 325 U.S. 711, 65 S.Ct.

1282, 89 L.Ed. 1886, was discussed by us in a recently decided case, St. Louis, San Francisco & Texas Ry. Co. v. Railroad Yardmasters of America, AFL-CIO, 5th Cir., 328 F.2d 749. Pointing out, as we did, in that opinion that the court has adhered to the distinction between minor disputes and major disputes we there said, "It is plain here that the dispute raised by the complaint could be resolved only by construing the existing contract. It follows that the trial court erred in entertaining jurisdiction of the suit. The appellee should have been remanded to the grievance procedures set forth in the contract."

We thus recognized what has always been the distinction between the two types of disputes. If "the dispute relates either to the meaning or proper application of a particular provision [of an existing agreement] with reference to a specific situation or to an omitted case," Elgin, Joliet & Eastern Ry. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886, it is a minor dispute no matter how seriously it may affect the parties to the contract.

With these general principles in mind we look first to the first issue stated above. Clearly, the complaint by which this litigation was started was based on the theory that the agreement between Aaxico and ALPA was a continuing one and was still in effect. The complaint showed that the appellant had proceeded on the theory that the contract had been terminated. How, then, was this question to be decided? Obviously, it could be decided only by interpreting the agreement itself and thus it was a minor dispute, one which under the completely uniform holdings of the courts must be submitted to the grievance procedures with final decision to be made by the System Board of Adjustment. We conclude, therefore, that it was beyond the competence of the trial court to resolve this dispute.

So, too, with respect to the other interpretations made by the trial court of the obligations of the parties under the terms of the agreement. For instance, whether, assuming the contract was still in effect, Aaxico was required to recall for the operation of the new equipment requiring greater or different skills, the pilots who had previously been furloughed, was necessarily to be determined from the contract of employment. The failure of Aaxico to recall the pilots and, in their place, the acceptance of pilots furnished by another agency, if objected to by ALPA or any of the plaintiffs, was the proper subject of grievance procedures in the traditional sense. Thus, it was beyond the competence of the trial court to resolve these issues as well, of course, as the issue of whether the pay requirements under the contract were to be carried out.

We think it clear that if the proof shows that Aaxico made impossible the carrying out by the appellees of the grievance procedures to the System Board of Adjustment, the trial court had jurisdiction to order Aaxico to carry out its obligations under the contract to make arbitration and decision of these matters effective. Virginia Ry. Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789.

The undisputed facts present in this case probably warrant a comment that, regardless of how the trial court finally determines the factual issues, a normal processing of the disputes immediately after they arose would have proved the efficacy of the plan contemplated in the Railway Labor Act, whereas the failure to resolve these disputes promptly has resulted in litigation that will inevitably lead to serious unanticipated loss to one party or the other. This is true because if the question of the termination of the contract had been resolved in the fall of 1960 at a time when no pilots were employed or sought to be employed by Aaxico, this whole dispute might well have been resolved before the commencement of the operations by the use of new equipment July 1, 1961. We do not intimate a judgment on the issue whether the circumstances existing after the exchange of correspondence at that time

amounted to either an acquiescence by appellees or a waiver of a right to pursue the dispute further, but we do hold that the extent of the rights of the appellees thereafter was to present their contention to the district court that they were unable to pursue their grievance procedures because of stated failures on the part of the appellant to make such processes available. Thereupon the trial court could promptly have resolved this issue either by directing submission of the questions to the grievance procedures or by holding that the appellees no longer had such rights.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.