AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Petitioner,

v.

CIVIL AERONAUTICS BOARD, Respondent,

Aaxico Airlines, Inc., Saturn Airways, Inc., Intervenors.

No. 19694.

United States Court of Appeals
District of Columbia Circuit.

Argued March 24, 1966.

Decided April 28, 1966.

Mr. Charles J. Morris, Dallas, Tex., for petitioner.

Mr. Peter B. Schwarzkopf, Atty., C. A. B., with whom Asst. Atty. Gen. Donald F. Turner, Messrs. Joseph B. Goldman, Gen. Counsel, O. D. Ozment, Deputy Gen. Counsel, Robert L. Toomey, Frederic D. Houghteling, Attys., C. A. B., and Mr. Howard E. Shapiro, Atty., Dept. of Justice, were on the brief, for respondent. Mr. Lionel Kestenbaum, Atty., Dept. of Justice, and Mr. John H. Wanner, Gen. Counsel, C. A. B., at the time the record was filed, also entered appearances for respondent.

Mr. Leonard N. Bebchick, Washington, D. C., for intervenors.

Mr. Robert M. Lichtman, Washington, D. C., entered an appearance for intervenor Saturn Airways, Inc.

Before EDGERTON and PRETTYMAN, Senior Circuit Judges, and McGOWAN, Circuit Judge.

McGOWAN, Circuit Judge:

Before us for review is an order of the Civil Aeronautics Board authorizing two air carriers subject to its jurisdiction to merge. The two carriers involved are Saturn Airways, Inc. ("Saturn") and AAXICO Airlines, Inc. ("AAXICO"). Under the merger agreement, Saturn is the surviving corporate entity which will conduct on a unified basis the operations formerly carried on separately. Although there were a number of intervenors in the proceedings before the Board, only one of them is here complaining of the order. It is the Air Line Pilots Association, International ("ALPA"), a labor organization claiming representation rights with respect to certain of AAXICO's present or former employees. For the reasons appearing hereinafter, we leave the Board's order undisturbed.

I

The scheme of the Federal Aviation Act, 72 Stat. 731 (1958), as amended, 49 U.S.C. §§ 1301–1542 (1964), with respect to merger authority is embodied in Section 408. It forbids merger without prior authorization by the Board upon application therefor, but it directs that, after notice and hearing, such authority shall be given *unless* the Board finds that it "will not be consistent with the public interest" or any of the express provisos enumerated in the Act. The Board is specifically empowered to grant its approval "upon such terms and conditions as it shall find to be just and reasonable."

ALPA's challenge to the Board's order is formulated in a number of different— and overlapping—ways. The central claim, however, is that the Board erred in making the requisite finding of consistency with the public interest. There are two main branches to this argument. The one more insistently pressed is that the troubled history of AAXICO's labor relations with ALPA calls for rejection of the merger in its entirety, or at least the prescription of additional conditions which will remedy AAXICO's asserted violations of the Railway Labor Act.[1] The other main objection made by ALPA is that the merger has been contrived for the purpose of circumventing the grant of power to the President in Section 801 of the Federal Aviation Act to pass upon the transfer of an air carrier certificate. We turn first to the matters subsumed under the labor relations approach.

II

In order to resolve the issues presented in this statutory review proceeding, we do not believe it necessary to recount in detail the history of ALPA's dealings with AAXICO over the last several years. It is clear that in 1955 the National Mediation Board certified ALPA as the bargaining representative of the pilots employed by AAXICO. In 1956 the first of a series of collective bargaining agreements was entered into between them. At a time when such an agreement was in effect, that is to say, June 30, 1960,

---

1. 44 Stat. 577 (1926), as amended, 45 U.S.C. §§ 151–188 (1964). This is, of course, the regulatory law which Congress has made applicable to labor relations in the air transportation industry.

AAXICO lost its military contract and, in consequence, terminated all of its operations. This resulted in the furloughing of 221 pilots, although many of them were promptly provided with employment during the ensuing 12 months by AAXICO's successful competitor for the Government business. They flew in large part planes leased from AAXICO, and the terms and conditions of their new employment were as set forth in the collective bargaining agreement with AAXICO. In the autumn of 1960 there was an inconclusive exchange of views between ALPA and AAXICO over whether their agreement was still in being, with AAXICO expressing the view that it was not, and ALPA disagreeing.

AAXICO's exile from the public pastures proved to be only temporary. It was the successful bidder for the military contract for the fiscal year beginning July 1, 1961. It took the position that it was under no legal obligation to recall its former pilots, and it concluded not to do so for what it asserted to be a number of practical reasons centering mainly around the question of qualifications to fly a new type of aircraft. Instead, it filled its needs by contract with two outside suppliers of skilled labor. ALPA, claiming a violation of the bargaining agreement, filed a grievance, but AAXICO, adhering to its view that there was no such agreement in being, took no notice of the grievance.

On August 24, 1961, ALPA sued in the United States District Court in San Antonio to enforce the agreement as construed by it. Its success in the District Court was tempered by the decision of the Fifth Circuit on appeal that only a Railway Labor Act system board of adjustment, as contemplated in the agreement, could interpret and apply the agreement. It remanded with directions that the District Court confine itself to compelling AAXICO to participate in creating such a board, provided that the District Court first satisfied itself that ALPA had not waived the agreement. AAXICO Airlines, Inc. v. Air Lines Pilots Ass'n, 331 F.2d 433 (5th Cir.), cert. denied 379 U.S. 933, 85 S.Ct. 333, 13 L.Ed.2d 344 (1964). The District Court on remand ordered the establishment of a system board, and reserved jurisdiction to enforce its award. AAXICO's appeal from this action was held unavailing by the Fifth Circuit on March 9, 1966, 358 F.2d 744. Prior to that date, the unstayed order of the District Court had been operative. The system board convened, deadlocked, and acquired a neutral chairman by appointment of the National Mediation Board. The system board took evidence from the parties in the late summer of 1965; and the issues are now in the bosom of the board or, to be anatomically more precise, in that of its neutral chairman.

The merger application was filed with the CAB on November 10, 1964, which was some months after the Texas litigation had reached the stage of the first Court of Appeals decision. By the time the District Court entered its order on remand (October 19, 1965), the CAB's order here under review had been issued and was effective (September 21, 1965). Although asked to stay the consummation of the merger, the District Court in San Antonio declined to do so, noting that the CAB "in approving the merger has provided for the protection of the rights of [ALPA] and its pilot members, by retaining jurisdiction to compel enforcement of any relief afforded by the system board of adjustment."

The CAB order authorizing the merger contains the standard labor protective conditions, with a further reservation of jurisdiction to alter or enlarge them if necessary in order to assure the Board's ability to give effect to the decision ultimately to be forthcoming from the system board. As an added protection, however, the merged carriers are expressly enjoined not to integrate the seniority rosters of former AAXICO and Saturn flight personnel until the dispute between ALPA and AAXICO has been finally resolved.

We confess to a certain surprise at the contention which ALPA urges upon us

here. Having itself, long before the merger was proposed, invoked the aid of the federal courts in Texas to compel AAXICO to cooperate in the resolution of the dispute by the system board of adjustment provided for in the bargaining agreement, it appears now to say that the CAB was required to decide the matter itself in the merger case. This presumably rests upon the premise that, if AAXICO was wrong in its construction of the agreement, then the merger could not be consistent with the public interest no matter what other considerations might be advanced in its favor. At least in the circumstances of this record, we attribute to a pending labor dispute no such overwhelming dominance of the discretion vested in the CAB by Congress to weigh all factors relevant to the public interest consideration in a merger case.

■ It is true, of course, that Section 401(k) (4) of the Aviation Act generally conditions the certificate of any air carrier upon compliance with the Railway Labor Act. But this does not mean that the CAB must itself resolve all contract disputes which arise between air carriers and their employees, especially when the dispute comes to the CAB's attention at a time when the complaining party has long since acted successfully to get the dispute in process of resolution by a system board of adjustment, and where a decision will eventually be forthcoming

from that competent and expert tribunal.[2] The CAB would, of course, be derelict if, in approving the merger, it refused to take any cognizance that such a dispute existed. But the CAB, as well as the District Court in San Antonio, have made it plain that the surviving carrier is going to carry out to the letter whatever the system board decides. The CAB's conditions to this end appear to be as effective as they are complete, and assure that such contract obligations as AAXICO may be found to have had to its ALPA pilots will be remedied in full. We do not think that the public interest in the merger required more.

To the extent that ALPA's argument is that, even in the absence of a system board ruling against AAXICO, the CAB should have concluded that the AAXICO management was so obviously anti-labor that the merged carrier cannot be relied upon to live up to the certificate condition that it comply with the Railway Labor Act, we do not think that the Board's usual discretion was foreclosed by the evidence. AAXICO's business was peculiarly subject to drastic discontinuities and alterations, which undoubtedly injected some complexities, legal and otherwise, into its labor relations. We cannot say that, looking at all the evidence, the CAB could only conclude that AAXICO was hopelessly and malevolently archaic in its concept of its obligations to organized labor.[3]

2. In Flight Engineers' Int'l Ass'n, etc. v. CAB, 118 U.S.App.D.C. 112, 332 F. 2d 312 (1964), similar contentions were before us. The petitioning labor organization filed a complaint with the CAB under Section 1002(a) of the Act alleging various violations of Section 401(k) (4). We upheld the Board's dismissal of the complaint without a hearing, noting that the Federal Aviation Act did not require the CAB "to act as a general labor board for the airline industry in all cases where a carrier has violated the Railway Labor Act." 332 F.2d at 315. In upholding the Board's exercise of discretion, we regarded as particularly relevant the fact that the relief requested involved some matters which should be decided by the National Mediation Board and other matters for which relief could

be found in a system board of adjustment. Appellant would distinguish *Flight Engineers'* because it involved the dismissal of a complaint under Section 1002 (a). But we relied not only upon the language of Section 1002(a), but also upon the Board's discretion to determine *appropriate enforcement action.*

3. See Great Lakes Airlines, Inc. v. CAB, 111 U.S.App.D.C. 21, 294 F.2d 217, 226, cert denied 366 U.S. 965, 81 S.Ct. 1920, 6 L.Ed.2d 1256 (1961). We there noted that findings of past violations serve only as the basis for an inference as to the future conduct of the carrier and that the nature of the violations as well as the surrounding circumstances are relevant in appraising the likelihood of future compliance.

Thus we think it is that, insofar as ALPA's labor difficulties with AAXICO are urged upon us as disabling the CAB from finding the merger not inconsistent with the public interest, the argument fails. Nor do we find necessary the additional conditions suggested by ALPA for protective purposes. These suggested conditions are either so general (*i. e.*, that the merged carrier comply with the Railway Labor Act) as to be either meaningless or superfluous, or so specific (*i. e.*, that the AAXICO pilots of 1960 be reinstated) as to trench upon the area of decision presently committed to the system board.

### III

AAXICO and Saturn both held interim certificates of convenience and necessity [under Public Law 87–528, 76 Stat. 143]. Saturn had, in addition, a five-year certificate for transatlantic passenger charter service. It is this latter certificate which ALPA now argues is being transferred without Presidential scrutiny as required in Section 801 of the Act. Since this is not a forfeiture or disciplinary proceeding asserting the President's interest in the integrity of the reviewing powers vested in him by Congress, ALPA's argument takes the form that the public interest is not consistent with a merger which is in reality a sham to dispense with the requirement of Executive review. ALPA says in effect that AAXICO is really the surviving carrier if substance is looked to and not form; and that, accordingly, Saturn's passenger certificate has been transferred within the reach of Section 801.

It is certainly true that, in strict legal contemplation, there has been no transfer. Saturn held the certificate before the merger. Saturn, as the surviving legal entity, continues to hold it after the merger. But ALPA says that AAXICO, because of its superior financial resources and the resulting weight of the interest in the merged company allocated to the AAXICO ownership, has really purchased the certificate and transferred it to itself, thereby necessitating Presidential approval.

The Board rejected this contention, and we think there was evidence to support its position. The merger appeared to offer substantial business advantages to each of the contracting parties. Saturn had carried only passengers since it began operations in 1948. Its cash position was marginal, as was its ability to attract capital in the face of its substantial indebtedness. The transatlantic charter operations had shown promising growth, but Saturn needed to acquire jet aircraft in order to be competitive. AAXICO, on the other hand, had been a cargo carrier, handling only military business in more recent years. This had been profitable business, despite its narrow base. AAXICO was without long-term debt; and its credit was commensurate with its good cash position and earnings record. A shadow, however, had fallen across its balance sheet in the form of a policy announcement in 1964 by the Department of Defense that it would henceforth award military contracts only to air carriers deriving at least 30 per cent of their revenues from civil business.

Thus, although AAXICO's commanding financial position assured its owners of a proportionately large interest in the surviving carrier, the sole stockholder of Saturn was not without some considerable trading counters of his own in the negotiation of the merger agreement. If Saturn was, as ALPA asserts, only the tail of the dog, then it was a tail of no mean proportions, and one which, as in the case of certain breeds, entered heavily into the total configuration. We certainly cannot say that the choice of Saturn as the surviving corporation was wholly irrational, nor that the CAB could only have found the transaction to be a patently artificial attempt to bypass the White House.

The order appealed from is

Affirmed.