DISTRICT 100, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, Plaintiff,

v.

COMPAGNIE NATIONALE AIR FRANCE, Defendant.

No. 76 C 200.

United States District Court, E. D. New York.

June 9, 1976.

Kevin P. Quill, Astoria, N.Y., for plaintiff.

Poletti Freidin Prashker Feldman & Gartner by Murray Gartner, New York City, for defendant.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff District 100,[1] a district lodge of the International Association of Machinists and Aerospace Workers ("IAM"), brought this action under 45 U.S.C. §§ 151–188, seeking an order compelling defendant Air France, a foreign air carrier, to process a grievance before the System Board of Adjustment ("System Board"). The case is now before the court on defendant's motion to dismiss, Rule 12(b)(6), F.R.Civ.P., or for summary judgment under Rule 56, F.R.Civ.P. For the reasons which follow, defendant's motion is granted.

1. District lodges are chartered by the grand lodge of the international union, and are composed of representatives elected from local lodges, *i.e.*, local unions.

2. The pertinent provision relating to commissary supervisors reads as follows:

These facts appear to be undisputed: Prior to May 30, 1974, there were two relevant working agreements between Air France and IAM, one covering ramp service employees, commissary employees, kitchen men, hors d'oeuvre men and cooks and the other covering maintenance supervisors, radio electronic supervisors, provisioning supervisors, load and ramp supervisors and commissary supervisors ("the Supervisors Agreement").

On May 30, 1974, the IAM, by George Kleiman, and Air France signed a Mediation Agreement ending a four and one-half month strike. The pertinent portion of the Mediation Agreement permitted Air France to engage independent contractors to perform commissary work previously done and supervised by Air France employees, who were IAM members,[2] and for the severance of the latter from the company's employ as indicated below.

On May 24, 1974, the day the IAM ratified the terms of the Mediation Agreement, Air France laid off all commissary employees and supervisors. On May 28, 1974, Air France offered the laid-off commissary employees, whose positions were to be eliminated, a choice of one of four severance options. The first three options presented alternative forms of severance pay and pension rights, while the fourth option permitted the employee to request that Air France attempt, until June 30, 1974, to find a different company position for him, failing which he was requested to choose among the first three options. These options provided greater benefits than are normally available to an employee who is laid off. Article XIII(p). All commissary supervisors except three, Pasquale Ianniciello, John Dwyer and Joe Dwyer, accepted one of the four options.

After the Mediation Agreement became effective, the two working agreements

"*Supervisors*
"Contract-out all Commissary Supervisors and Senior Commissary Supervisors' work under same conditions as negotiated for Commissary agents, Kitchen Men, Hors d'oeuvre Men and Cooks Classification."

were changed by deleting all references to commissary employees and supervisors both in the titles of the agreements and in the provisions relating to job classification. Article IV. The working agreements, as modified, continue in effect until September 30, 1976.

On July 17 and August 22, 1974, Kleiman, representing the IAM, wrote to Air France complaining that the latter was not honoring its obligation to contract-out the commissary work formerly done by IAM members and was, instead, employing its own management personnel to do the work. Air France responded on August 22, 1974, denying the charged contractual infraction.

By letter dated September 9, 1974, the IAM requested the National Mediation Board to interpret the language of the Mediation Agreement concerning the commissary supervisors. See note 2, *supra.* After holding a hearing in December 1974, the National Mediation Board rendered its decision on April 11, 1975, interpreting the language to mean as follows:

"We find that the Organization and the Carrier agreed that all duties previously performed by Commissary Supervisors and Senior Commissary Supervisors would be performed by personnel not in the employ of Air France and further that Air France personnel would not in any way directly supervise the employees of the company hired to perform the Commissary work."

On May 2, 1975, Ianniciello, one of the three former commissary supervisors who did not select one of the four severance options, purporting to represent all former Air France commissary supervisors, filed a grievance[3] complaining of Air France's claimed violation of the Mediation Agreement, as interpreted by the National Mediation Board. On May 19, 1975, Air France, acting by Eugene S. Carrara, Personnel Services Manager, refused to accept the grievance and returned it.[4] In a letter ac-

---

**3.** The parties agree that the three-step grievance procedure as set out in Article XIV–A of the relevant Labor Agreement in effect between the IAM and Air France provides as follows:

"Step 1. An employee or one designated member of a group of employees who believe that he/they have been unjustly dealt with or that any provisions of this Agreement have not been properly applied or interpreted will present his/their grievances or complaints with or through his/their designated local Union Committeeman within fifteen (15) days to his/their immediate supervisor who shall render his decision within five (5) days following the receipt of the grievance or complaint.

"Step 2. If no satisfactory adjustment is reached in Step 1, the grievance will be reduced to writing on the Standard Grievance Form provided for that purpose by the Company and appealed with or through the Local Grievance Committee to the Department Head within five (5) days from the receipt of the decision rendered in Step 1. The Department Head will render his decision in writing within ten (10) days following the receipt of the grievance. If no decision is rendered within such ten (10) day period, the grievance shall be deemed to be appealed automatically to Step 3; and if the grievance is subsequently appealed, to the System Board of Adjustment or Arbitration, and the Board, sitting with a third member, or the neutral arbitrator, decides in favor of the grievant, then the Company shall pay all of the compensation and expenses of the third member of the Board or of the neutral arbitrator.

"Step. 3. If no satisfactory adjustment is reached in the previous step, the grievance and decision thereon may be appealed to the System Board of Adjustment as set forth in this Agreement or may, by mutual agreement, be submitted to arbitration, provided that the intent to arbitrate is made within thirty (30) days from receipt of the decision made by the Department Head."

**4.** Since the entire commissary department had been eliminated the grievance could not be submitted to an immediate supervisor under step one of the grievance procedure. See note 3, *supra.*

companying the returned grievance, Carrara explained, in essence, that former commissary supervisors were no longer Air France employees and consequently could not grieve.[5]

On May 28, 1975, Adam Dombroski, General Chairman of District 100, wrote to Carrara with reference to the latter's May 19th letter as follows:

"Our position is to follow the procedure contained in the agreement for the orderly resolution of this dispute and proceed to the System Board of Adjustment or directly to Arbitration.

"Therefore, by copy of this letter, you are respectfully requested to contact and arrange with the undersigned a procedure to resolve this matter."

On May 30, 1975, Dombroski and Carrara appeared before the System Board, apparently in the regular course of business, and Dombroski raised the question of the Ianniciello grievance. Carrara refused to discuss the matter, reiterating his position that the grievance procedures, see note 3 *supra*, were not available to former commissary supervisors.

To date, the System Board has taken no action with respect to the grievance. This action was commenced on January 30, 1976 by District 100.

In its complaint, District 100 alleges that Air France's refusal "to consider the grievance prevents the System Board from considering the grievance." Compl. ¶ 6. The relief sought is an order compelling Air France to join with plaintiff in submitting the grievance to the System Board.

Air France now moves to dismiss the complaint or for summary judgment, asserting several different grounds: (1) plaintiff District 100, as contrasted with IAM, the international union, has no standing to bring this action; (2) the grievance procedures set forth in the labor agreements

between IAM and Air France, see note 3, *supra*, do not apply to disputes arising out of the terms of the Mediation Agreement; (3) commissary supervisors are no longer Air France employees and are not covered by any existing labor agreement; and (4) it is the obligation of the union, not Air France, to appeal a grievance to the System Board. For the reasons discussed below, the court believes that Air France is entitled to judgment on all of these grounds.

## I.

■ Air France's first ground for dismissal is predicated on the undisputed fact that District 100 is not a party to the labor agreement whose provisions it is suing to enforce. The Supervisors Agreement states in its Preamble that it is an agreement between Air France and IAM, not District 100, and in Article II(a) notes that it covers employees "working in the fifty (50) states of the United States. . . ." Even though the General Chairman of District 100 is authorized to sign collective bargaining agreements, it is clear that he signs *on behalf of the IAM*, not District 100. While District 100 may properly provide an authorized representative to handle grievance procedures at particular points on the system, Article XIV(a), it cannot arrogate to itself the authority to sue as a party to a national labor agreement.[6]

Moreover, District 100 is not a party or even a signatory to the Mediation Agreement, about whose provisions this dispute centers.

*Local Union No. 12405, District 50, UMW v. Martin Marietta Corp.*, 328 F.2d 945 (7 Cir. 1964), *cert denied*, 379 U.S. 880, 85 S.Ct. 147, 13 L.Ed.2d 87 (1965) cited by Air France, is apposite. There, as here, a local union brought suit to enforce provisions of a collective bargaining agreement to which it was not a party. The court affirmed

---

5. Carrara also maintained that even if Air France were in breach of its contractual obligation—a fact he denied—that did not mean that *former commissary supervisors must be re-hired.*

6. Even plaintiff's complaint refers to the IAM as "the duly authorized exclusive bargaining representative for various classifications of employees including the Commissary Supervisors . . . ." Compl. ¶ 2.

dismissal of the suit on the ground that the corporation agreed to arbitrate disputes only with the bargaining agent and not with individual employees or their *Local* representative. The court relied on reasoning, applicable here, that the bargaining agent alone must have the power to decide which grievances to pursue so that the interests of *all* its principals may be best represented.

The Mediation Agreement which contained many general and specific provisions affected IAM members all over the country [7] in varied ways and it is thus important that only the IAM itself decide which courses of action, or inaction, are most appropriate.[8]

Accordingly, defendant's motion to dismiss the complaint on the ground that plaintiff is not a party to the agreement sued on is granted.

## II.

The next two grounds for dismissal urged by Air France are premised on the difference between major and minor disputes and the availability of the System Board to resolve only the latter. As has been said:

> "If 'the dispute relates either to the meaning or proper application of a particular provision [of an existing agreement] with reference to a specific situation or to an omitted case,' *Elgin, Joliet & Eastern Ry. Co. v. Burley*, 325 U.S. 711 [722–724], 65 S.Ct. 1282, 89 L.Ed. 1886, it is a minor dispute no matter how seriously it may affect the parties to the contract."

*Aaxico Airlines, Inc. v. Air Line Pilots Ass'n International*, 331 F.2d 433, 437 (5 Cir. 1964).

Here, the dispute does not arise out of the meaning or proper application of any provision in the Supervisors Agreement, whose grievance procedure Ianniciello seeks to invoke. Rather, the controversy centers on whether Air France is honoring its obligations under a separate Mediation Agreement, which effected a major change in the working conditions previously covered by the Supervisors Agreement, i. e., the complete elimination of the position of commissary supervisor.[9]

By its terms, the System Board's jurisdiction does not "extend to proposed changes

---

7. In fact the July 17, 1974 letter from Kleiman to Air France, complaining of the alleged contractual breach, referred not only to New York but also Chicago, Los Angeles and Houston.

8. In an affidavit submitted in opposition to this motion, Dombroski states that "the Grand Lodge is willing . . . to amend the caption of this action to reflect the [IAM] as the plaintiff." Aff. of Adam Dombroski ¶ 10. However, since Dombroski is not an officer of the international union this representation is without legal significance. See Rule 56(e). F.R.Civ.P.

9. Plaintiff's attempt to establish that a factual question exists as to whether under the Mediation Agreement the commissary supervisors were terminated, as Air France maintains, or simply laid off with continuing seniority, is unavailing. A review of the papers submitted in support of and opposition to defendant's motion reveals that plaintiff has failed to establish the existence of a genuine issue of fact on this point.

As Air France notes: (1) commissary supervisors were offered greater severance benefits than are normally given laid-off employees; (2) the names of former commissary supervisors were dropped from seniority lists submitted to the union on January 31 and May 30, 1975 and no protest was made by the union; (3) the working agreement was modified to delete all references to the position of commissary supervisor; and (4) the April 11, 1975 opinion of the National Mediation Board, interpreting the disputed provision, stated in part:

> "In resolving this issue, the parties had agreed that the positions of sixteen Commissary Supervisors and Senior Commissary Supervisors would be *eliminated* . . . ." (Emphasis supplied.)

The only countervailing evidence proffered by plaintiff is a letter from Air France dated July 3, 1974 reflecting that all commissary employees were laid off, effective May 24, 1974. This letter, however, does not controvert Air France's basic contention that those employees were finally terminated *as of June 30, 1974*, if no other company position was found for them under option # 4.

In sum, there is really no doubt that commissary supervisors were terminated as of June 30, 1974, not laid off, and their positions were abolished.

in . . . working conditions covered by this Agreement or any amendment thereto." Article XV(d). This is in accordance with the normal function of a working agreement to establish rates of pay, rules and working conditions for present employees; it does not cover major items such as the abolition of job classifications. In sum, the "contracting-out" provision of the Mediation Agreement is simply not the type of provision which would normally be found in a working agreement and is thus not resolvable by the grievance procedure applicable only to the terms of working agreements.

Additionally, as noted earlier, after the Mediation Agreement was signed, the Supervisors Agreement was amended to reflect the elimination of the position of commissary supervisor. Accordingly, the agreement under which the commissary supervisors seek to grieve no longer exists. *Cf. Flight Engineers Int. Ass'n, EAL Chapter v. Eastern Air Lines, Inc.*, 359 F.2d 303, 309–10 (2 Cir. 1966).

Accordingly, Air France's motion for summary judgment on this ground is granted.

### III.

Even assuming *arguendo* that the dispute here is properly resolvable by the System Board, Air France would still be entitled to summary judgment dismissing the complaint on its last asserted ground. In order to be entitled to the relief sought, plaintiff must establish that Air France has frustrated the operation of the established grievance procedure, necessitating judicial intervention. *Aaxico, supra*, 331 F.2d at 436–37; *Flight Engineers, supra*, 359 F.2d at 309.

In its complaint, plaintiff has summarily alleged that Air France has prevented the System Board from considering the grievance, but it has not specified in what manner Air France has accomplished this.[10] As Air France points out, the System Board is not an organ of the company; rather, it consists of one company member and one union member. Since Carrara was not even the one company member of the System Board, Aff. of Eugene S. Carrara ¶ 14, it does not appear that his refusal alone to consider the grievance could have prevented the System Board from acting in the matter.[11] Compare *Flight Engineers, supra*, 359 F.2d at 309.

> Faced with Air France's assertion that "[p]lainly, the Company had no power under the Agreement to prevent an appeal of the grievance and the decision thereon from being filed. . . . The Company simply has no obligation . . to appeal from its own decision on a grievance, and put the Union's claim . . . before the System Board . . .."

Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint, or in the alternative, for Summary Judgment at 10–11, supported factually by the Carrara affidavit, plaintiff could no longer rest on the summary allegations in its complaint and had to come forward with affidavits setting forth specific facts showing there is a genuine issue to be tried. See Rule 56(e), F.R.Civ.P.

Plaintiff having failed to do so, Air France is entitled to summary judgment on this ground also.

Accordingly, defendant's motion to dismiss or for summary judgment is granted.

---

**10.** Similarly, during argument, plaintiff's counsel stated with reference to the May 30th colloquy before the System Board:

> "[A]t the May 30th meeting of the System Board, the question was presented to the Board. Air France refused to discuss the matter. They said there was no longer an employer/employee relationship and, therefore, the individual had no right at that time to file a grievance. The System Board thereby refused to take any action on it." Tr. 8.

**11.** Similarly, Carrara's refusal to acknowledge Ianniciello's standing to grieve could not prevent the System Board from deciding the matter because step two of the grievance procedure, see note 3, *supra*, clearly states that if the department head fails to render a decision within ten days following receipt of the grievance, it is deemed automatically appealed to the System Board.

SO ORDERED.

The Clerk of the Court is directed to enter judgment dismissing the complaint.