328 F.2d 945
 LOCAL UNION NO. 12405, DISTRICT 50, UNITED MINE WORKERS, et
al., Plaintiffs-Appellants,
v.
MARTIN MARIETTA CORP., a Maryland Corp., District 50, United
Mine Workers ofAmerica, Defendants-Appellees.
 No. 14200.
 United States Court of Appeals Seventh Circuit.
 March 3, 1964, Rehearing Denied April 3, 1964.
 
 Bernard M. Mamet, Chicago, Ill., for appellants.
 Herbert C. Loth, Abe R. Peterson, Owen Rall, Chicago, Ill., for defendant-appellee, District 50, United Mine Workers of America; Peterson, Lowry, Rall, Barber & Ross, Chicago, Ill., of counsel.
 James B. O'Shaughnessy, Robert Ackerberg, Jr., Chicago, Ill., for Martin Marietta Corporation, defendant-appellee; Dallstream, Schiff, Hardin, Waite & Dorschel, Chicago, Ill., for counsel.
 Before HASTINGS, Chief Judge, and KNOCH and CASTLE, Circuit Judges.
 KNOCH, Circuit Judge.
 
 
 1
 Plaintiff, Local Union No. 12405, District 50, United Mine Workers, hereinafter called the 'Local,' brought suit in the United States District Court, pursuant to 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. 185, to enforce the arbitration provisions of a collective bargaining agreement made with defendant, Martin Marietta Corp., hereinafter called 'Martin.' The Local also sought damages for alleged breach of contract, and a temporary restraining order enjoining Martin from closing down its Chicago Heights, Illinois, plant and laying off its employees there, pending arbitration. The individual plaintiffs are employees of Martin at the Chicago Heights plant who filed a grievance, described below, which, inter alia, questioned Martin's right to terminate operations at its Chicago Heights plant and to lay off its employees there.
 
 
 2
 Another aspect of the case, distribution of certain pension funds, was involved in the District Court proceedings, but has been specifically excluded from the notice of appeal.
 
 
 3
 District 50, United Mine Workers of America, hereinafter called 'District 50,' the International with which the Local was affiliated, intervened as a defendant in the District Court. On motion of Martin and District 50, at the close of plaintiffs' evidence in the District Court, judgment was entered for the defendants. This appeal followed.
 
 
 4
 Martin's predecessor had a history of collective bargaining going back through 1941. The current agreement was entered into May 16, 1961, and was signed by the Presstite Division, American-Marietta Company, (which later merged with the Martin Company to form the Martin Marietta Corp., which assumed all contractual obligations) through its plant manager; by District 50 'on behalf of Local Union #12405, of the United Mine Workers of America' through its regional director and its field representative; and, was also signed, although they were not specifically named as parties to the contract, by the Local through its president, a plaintiff in this action; by the 'negotiating committee' all of whom are also plaintiffs here; and 'approved' by the president of District 50.
 
 
 5
 In September 1962, Martin wrote the Regional Director of District 50, with a copy sent to the President of the Local, all of whose members were employees at the Chicago Heights plant, that Martin would cease operations there, and hoped to close the plant by November 30, 1962.
 
 
 6
 The President and Vice President of the Local met with Martin's plant manager, as did the Local's grievance committee. A third meeting with a field representative of District 50 occurred in September or October, 1962. There was an expression of great concern respecting the disposition of the pension and other funds. Nothing apparently was said about any transfer of operations. In October 1962, District 50's regional director, Mr. Bowers, promised to check on the funds and also told the Local's representatives that Martin had a right to shut down its plant if it wished to do so. However, without advising District 50, the Local engaged counsel and presented a grievance dated November 15, 1962. District 50 learned of this grievance the following day at a meeting of representatives from Martin, the Local, and District 50, including the members of the grievance committee and attorneys for Martin.
 
 
 7
 The grievance made no mention of any transfer of operations, merely questioning Martin's right to terminate operations and employment; in the alternative, requesting salaries for the duration of the current bargaining agreement, relocation at other Martin plants and relocation expenses; and distribution of the pension monies. A copy of the grievance was sent to District 50 with a letter dated November 15, 1962, which stated that the first three steps of the grievance procedure set out in the collective bargaining agreement had been taken. It has since been argued that the November 16, 1962, meeting was the third step. District 50's president replied to this letter that the first two points of the grievance were subject to the bargaining agreement between District 50 and Martin and that plaintffs' attorney could not bargain with Martin on these issues because he did not represent District 50; nor could he bargain as to the third point because he did not represent any party to the Pension Agreement.
 
 
 8
 At the meeting on November 16, 1962, District 50 and Martin both characterized the grievance as invalid. Most of the meeting was devoted to discussion of the pension fund which the Local wished to have split equally among all the employees. Martin asserted that there was no provision in the bargaining agreement for severance pay and that transfers of employees with preservation of seniority was not feasible in this instance because the other plants were all in operation, staffed and organized with their own unions.
 
 
 9
 Plaintiffs' attorney was excluded from the meeting on November 16 and from the following meeting on November 19, 1962. At a membership meeting on November 21, 1962, the Local decided to demand arbitration. A copy of their 'demand' was presented to Martin's plant manager, who refused to recognize it as such, and on November 23, 1962, plaintiffs filed their aforesaid complaint in the U.S. District Court against Martin, seeking arbitration and damages for breach of contract, including as such breach the refusal to distribute the pension fund.
 
 
 10
 When District 50 was allowed to intervene as a defendant, it set out in its answer and in its cross-claim for declaratory judgment, that it was the sole bargaining representative for members of the Local under the agreement with Martin, that it was still engaged in negotiation of the first two points of the grievance, no impasse having been reached, and that nine pensioners with vested interests in the pension fund were indispensable parties to any disposition of the pension fund.
 
 
 11
 Although nothing was apparently said to District 50 about transfer of operations, plaintiffs asserted in the complaint and in their brief on appeal that Martin was not going out of business in Chicago Heights but were merely transferring most of its operations from Chicago Heights to other plants. Plaintiffs' counsel agreed in the District Court that Martin did have a right to go out of business or discontinue 'the work which had been done in the Chicago Heights operation' (as District 50 representatives had advised the Local) and that he would not object to that. The District Court did not find however that there was any transfer of operations from Chicago Heights plant to other plants. There was evidence to support the District Court's finding that:
 
 
 12
 '22. In November and December, 1962, and thereafter, the Company disposed of the operating equipment of its Chicago Heights, Illinois, plant by selling some items to outside persons, by transferring some items to its Jackson and St. Louis plants, and by scrapping the rest.'
 
 
 13
 The pension fund question, as indicated above, has been disposed of in the District Court. A number of other issues have been presented which we will not reach. We find the District Court's decision that District 50 was the sole collective bargaining agent with the exclusive power to refer a grievance to arbitration (with which conclusion we agree) dispositive of this appeal.
 
 
 14
 Under the collective bargaining agreement with Martin, only the 'Union' may refer grievances to arbitration. The agreement sets out the parties thereto as:
 
 
 15
 'PRESSTITE DIVISION, AMERICAN-MARIETTA COMPANY, whose plant is located at Chicago Heights, Cook County, Illinois (hereinafter referred to as the 'Company') and DISTRICT 50, UNITED MINE WORKERS OF AMERICA, on behalf of Local Union No. 12405 (hereinafter referred to as the 'Union')'
 
 
 16
 There are a number of provisions throughout the agreement, which, in our opinion, show that District 50 is the 'Union,' e.g. 'Union Dues' are to be sent to District 50 in Washington, D.C., which is to furnish written assignments; the fourth step of the grievance procedure outlined in the agreement refers to the field representative and the regional director of the 'Union,' and the Local has no such officers. The wording of the pension fund which is entitled:
 
 
 17
 'The District 50, United Mine Workers of America and Keystone Asphalt Products Company, a Division of the American-Marietta Company Pension Agreement'
 
 
 18
 also bolsters the conclusion that the 'Union' is District 50 and not the Local. The latter is designated as 'Local Union,' for example, in the reference to a joint committee selected by the Union and the Company to administer the pension fund, two to be appointed by the Company and two 'by the Administrative Officer of District 50 * * * one of whom shall be a member of the said Local Union * * *'
 
 
 19
 Plaintiffs contend that District 50 has merely made this contract 'on behalf of' the Local and that it is the Local which is 'hereinafter referred to as the 'Union"; that District 50 is at most an agent for the Local as the principal whose will must prevail in the event of conflict between the agent and its principal. Analogous arguments have been advanced for individual members of a union as the principals for whom the union acts as agent in making a contract with a company. We cannot agree. We find persuasive the reasoning in Remak v. Electric Auto Lite Co., 44 LC 25,799, Pa.Ct. of Com. Pleas, 1961, where the Court said:
 
 
 20
 'The collective bargaining agreement is a two-edged sword. On the one hand, it obliges the employer to negotiate with the union as the sole bargaining agent of the employees. On the other hand, it generally bars the employees from harassing employers with the grievance procedures, arbitration, and resort to the courts unless the bargaining agent, not the employee acting independently, avails itself of the procedures prescribed in the collective bargaining agreement.
 
 
 21
 and in Ostrofsky v. United Steelworkers of America, D. Md., 1959, 171 F.Supp. 782, 790, where the Court noted that:
 
 
 22
 'A union's right to screen grievances and to press only those it concludedes should be pressed is a valuable right, and on balance it benefits all employees. Professor Cox has pointed out (Rights Under a Labor Agreement, 69 Harv.L.Rev. 601) that there are 'strong reasons for concluding that the bargaining representative ought to have power under a broad industrial agreement to control the prosecution of claims for breach of contract, whether by pressing grievances, invoking arbitration, or instituting legal proceedings'.' 69 Harv.L.Rev. at 625.
 
 
 23
 which is cited with approval in BlackClawson Co., Inc. v. International Ass'n of Mach., 2 Cir., 1962, 313 F.2d 179, 186.
 
 
 24
 Plaintiffs invite our attention to United Electrical, Radio & Machine Workers of America v. Oliver Corporation, 8 Cir., 1953, 205 F.2d 376, where the introductory paragraph of the agreement recited that it was executed by and between the Company and the International Union 'on behalf of and in conjunction with' the Local Union 'hereinafter referred to as the Union.' The Court there held that the word 'Union' subsequently appearing in a no-strike clause meant the Local Union. The quoted words show that the contract in Oliver was made by the International and the Local Union. The Court construed the contract as imposing several and not joint obligations on the defendant International and Local Unions and held that:
 
 
 25
 'The failure of the Local Union before a strike or cessation of work to post the required notice on the plant bulletin boards and take the required strike vote was a material violation of the agreement; that the International Union, as a party to the agreement in conjunction with and on behalf of the Local Union was at least bound not to cause, induce, or promote a breach of the Local Union's obligations under the agreement.'
 
 
 26
 Thus, in Oliver, the word 'union' could refer to the International and the Local Union as indicated by the context.
 
 
 27
 We see no inconsistency in designating as 'Union' committees the grievance committee and the negotiating committee regardless of whether or not they are selected by the Local, as all members of the Local are also members of District 50.
 
 
 28
 Under the procedures set out in the collective bargaining agreement, the first and second steps of the grievance procedure do not require District 50 participation. A representative of District 50 must join in the third step. At the fourth step:
 
 
 29
 'The grievance will then be referred for the consideration of the local grievance committee, the Field Representative and the Regional Director for the Union and the President of the Company or any of his representatives. * * * If a grievance is not satisfactorily adjusted* * * in step four (4) above, then it may be referred by the Union, * * * to arbitration.'
 
 
 30
 District 50 was indispensable to step four which could not be bypassed by plaintiffs' own attempt to demand arbitration.
 
 
 31
 Adoption of plaintiffs' theory would leave Martin in an untenable position, having to choose at its peril whether to continue or to abandon pending negotiations with one representative of its employees to take up inconsistent demands with another. That is not the way to industrial peace.
 
 
 32
 We have weighed all other arguments urged on us by the plaintiffs and have studied all the references they have cited. We find no justification for reversing the decision of the District Court. The judgment is affirmed.
 
 
 33
 Affirmed.