**J. D. JOLLY et al., Plaintiffs,**

**v.**

**Walter GORMAN et al., Defendants.**

**Civ. A. No. 2283.**

United States District Court
S. D. Mississippi,
Hattiesburg Division.

March 4, 1969.

George Maxey, Laurel, Miss., and Jack Peebles, New Orleans, La., for plaintiffs.

J. Harvey Hedgepeth, Jackson, Miss., Denton B. Gibbes, Laurel, Miss., Hulse Hays, Jr., Cincinnati, Ohio, and James E. Youngdahl, Little Rock, Ark., for defendants.

OPINION DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND SUSTAINING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

DAN M. RUSSELL, Jr., District Judge.

The above styled action is before the Court on plaintiffs' motion for a summary judgment and defendants' responses thereto, and on motion for summary judgment by defendants, and plaintiffs' responses thereto. Subsequent to the filing of these motions, plaintiffs moved to amend their complaint by adding a second ground to their second cause of action. Defendants object to the proposed amendment. The Court has not ruled on the motion to amend, but, for purposes of this opinion, treats the motion as granted.

On August 28, 1968, J. D. Jolly, Granville Sellers, Herbert Ishee, and John A. West, individually, and as members and officers of International Woodworkers of America, AFL-CIO, Local 5-443, representing employees of Masonite Corporation, Laurel, Mississippi, filed their complaint for a preliminary and permanent injunction against Walter Gorman, individually, and as Trustee, International Woodworkers of America, AFL-CIO, and Masonite Corporation, in a first cause of action, based on provisions of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401 et seq., seeking an injunction against the trusteeship invoked

over Local 5–443. This first cause is directed solely against the Trustee and IWA, alleging that the trusteeship was illegally invoked without adequate notice or a fair hearing in violation of pertinent statutes, and in the absence of adequate remedies appearing in the constitution and by-laws. The first claim in the second cause of action is directed against IWA and Masonite alleging that a supplemental bargaining agreement of December 6, 1967, by and between Masonite and IWA on behalf of the local, is illegal, not having been entered into in conformance with the union's constitution and by-laws or the then existing bargaining agreement of March 3, 1967. The proposed amendment is a second claim to the second cause of action, alleging that Masonite and IWA, in entering into the supplemental agreement, have conspired to deny plaintiffs' right to bargain and to challenge the agreement. Defendants' objections to the proposed amendment are that it is unconscionably late, legally frivolous and avers no facts on which to base its conclusions.

The trustee and IWA denied the claims and causes of action.

Masonite denied the claims and causes and interposed separate defenses, cross-claims and a counterclaim. Masonite alleged that all named plaintiffs have been suspended as officers of the local and have no standing to sue; that the trusteeship is valid; that Masonite entered into the bargaining agreement of March 3, 1967, and the supplemental agreement of December 6, 1967 with IWA on behalf of the local and they were and are valid. As a prelude to other defenses, Masonite set forth the labor history of its relations with IWA and the local, showing that in 1946 IWA was certified by the National Labor Relations Board as the bargaining agent on behalf of Masonite employees. That bargaining contracts have continued up to and including the agreement of March 3, 1967, in which Article 23 consisted of a "no strike" clause. On April 21, 1967, the local, including plaintiffs, instituted an illegal strike by over 2000 employees, prompting mass picketing, acts of violence, and injuries to persons and property. Masonite promptly obtained an injunction from the Mississippi Supreme Court and the local was held in civil contempt. On April 25, 1967, Masonite filed in this Court its action for damages against IWA and the local, being Civil Action No. 2183. In May 1967, IWA and the local filed with NLRB an unfair labor practice charge against Masonite under Section 158(a) (1) (3) and (5), 29 U.S.C., which the Regional Director of NLRB investigated and dismissed. Later in the same month, Masonite filed unfair labor practice charges against IWA and the local upon which a formal complaint was issued, and the local and plaintiffs Jolly and West were found guilty. After numerous negotiation meetings, and in order to settle the dispute, Masonite and IWA, for and on behalf of the local, entered into the supplemental agreement of December 6, 1967, whereby Masonite withdrew its unfair labor practice charges, re-hired numerous former employees, reinstating their seniority and other benefits, and joined with IWA and the local to dismiss its damage suit, No. 2183, on the docket of this Court. Masonite avers that, as required by 29 U.S.C. § 159(a), it has bargained with IWA, and the supplemental agreement is an accord and satisfaction of all pending controversies; that the Norris-LaGuardia Act, 29 U.S. C. Sections 101, 104 and 107, denies the Court's jurisdiction and bars this action; that plaintiffs, being fully aware of the supplemental agreement, have unreasonably delayed the filing of the suit and are guilty of laches, and are estopped to bring this action by having joined in the dismissal of Civil Action No. 2183; and finally, there was a five-step grievance procedure under the terms of the March 3, 1967 agreement which plaintiffs failed to use, instituting an illegal strike instead. In the event the Court finds the supplemental agreement void,

Masonite cross-claims against IWA for $6,000,000.00 in damages, including all damages, costs and attorney fees which would allegedly have been recoverable in Civil Action No. 2183, and for the reinstatement of that suit. Masonite's counterclaim against plaintiffs is that if the supplemental agreement is void, the order dismissing Civil Action No. 2183 should be set aside.

Both IWA and plaintiffs responded respectively to the cross-claim and counterclaim, denying that Civil Action No. 2183 should be reinstated.

Prior to any hearing hereon, the parties began discovery proceedings by way of interrogatories. On November 6, 1968, plaintiffs filed their motion for summary judgment based on the pleadings, answers to interrogatories and the affidavits of Elton Odom, J. D. Jolly, Melbourne Buckhaults, Jack Peebles and John A. West, not filed until December 9, 1968, and on additional affidavits of Jolly, Granville Sellers, Orange Herrington and Audrey Holifield, not filed until December 19, 1968, all of these persons being members and/or officers of the local.

On the same day as their motion for summary was filed, plaintiffs sought to enjoin a meeting of the executive board of IWA to be held in Memphis, Tennessee on November 12, 1968. After a hearing before this Court on the morning of November 12, this motion was denied.

On November 11, 1968, Masonite filed its motion for summary judgment as to the second cause of action, based on the record, the affidavit of James D. Robertson, Masonite's director of employee relations, as supplemented on December 10, 1968, and on the affidavit of Denton Gibbes, Masonite attorney, to which are attached as exhibits copies of final judgments and decrees in the court actions referred to by Masonite in its affirmative defenses.

On December 6, 1968, the trustee and IWA filed their motion for summary judgment based on the pleadings, on affidavit of Ronald F. Roley, IWA president, to which are attached copies of the minutes of all IWA executive board meetings from November 28, 1967 to November 12, 1968, and on the affidavit of James E. Youngdahl, IWA attorney, with exhibits consisting of orders and decisions in various proceedings before NLRB and by arbitration.

A hearing on all three motions and responses thereto was had on December 23, 1968, following which all parties have supplied the Court with comprehensive briefs on their respective positions.

There are two issues presented by the motions. Was and is the trusteeship invoked by IWA over its local valid? And is the supplemental bargaining agreement of December 6, 1967, valid and binding as against the claims of plaintiffs? In the plethora of evidence before the Court, there are some factual disputes, but, in the opinion of the Court, none which would preclude a ruling on the motions.

Plaintiffs allege the invalidity of the trusteeship on four grounds: (1) The Landrum-Griffin Act requires that the international constitution set forth adequate procedures for the establishment of the trusteeship, which IWA's constitution fails to do; (2) the trusteeship was not imposed in accordance with constitutional procedures; (3) it was imposed without due notice and a fair hearing; and (4) it was not established for a valid purpose. Plaintiffs, for its motion for summary judgment, rely on the first three which are all related to procedural steps. In their brief in support of the motion, plaintiffs aver that these three grounds involve no issues of fact. Notwithstanding this concession, and after defendants filed their motions, plaintiffs have offered affidavits attempting to dispute factual issues of notice and hearing, but which the Court does not find material, as hereafter shown.

Section 462, Title 29 U.S.C. provides:

"Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization."

Section 464(c) provides:

"In any proceedings pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 of this title. After the expiration of eighteen months the trusteeship shall be presumed invalid in any such proceedings and its discontinuance shall be decreed unless the labor organization shall show by clear and convincing proof that the continuation of the trusteeship is necessary for a purpose allowable under section 462 of this title. In the latter event the court may dismiss the complaint or retain jurisdiction of the cause on such conditions and for such period as it deems appropriate."

Under these statutes, the trusteeship can be established only in accordance with pertinent provisions of the international constitution and which provisions must not be in conflict with the above statutes. United Broth. of Carpenters and Joiners of America v. Brown, 10 Cir., 343 F.2d 872, and Sawyers v. Grand Lodge, Intern. Ass'n of Machinists, D.C., 279 F.Supp. 747. The trusteeship so established is presumed valid, but only after a fair hearing. Local No. 2 Intern. Broth. of Tel. Workers v. Intern. Broth. of Tel. Workers, D.C., 261 F.Supp. 433. Article II, Section 7 of the IWA constitution is as follows:

"Section 7: When a charge has been made in writing to the International President or International Executive Board that either this Constitution, Local Union By-Laws or the Regional Constitution is being violated by a Region or Local Union, the International President shall immediately communicate in writing by registered mail with the Regional President and the Local Union President involved. He shall point out the alleged violation and upon determining that there is a violation, he shall seek voluntary agreement to end the violation. Failing to attain compliance, the International President may appoint upon approval of the International Executive Board a Trustee to supervise and administer all of the affairs of the Region or Local Union. The Trustee shall continue in this activity either until the cause for the violation has been corrected or until the next International Executive Board meeting, whichever occurs first. If the matter reaches the International Executive Board, the Board shall determine whether or not the Trusteeship shall continue. If the Trusteeship is continued the Board shall review the situation at its next meeting and shall again determine whether or not the Trusteeship shall continue. In the event the Local Union or Regional Council has been placed in Trusteeship, the International Executive Board shall make a complete report to the next International Convention for its action."

As it pertains to this case, this language requires that a written charge be made to the international president or executive board of a violation of the

constitution or local by-laws by the local union, that the international president communicate in writing by registered mail, pointing out the alleged violation and, upon a determination that there is or was a violation, seek a voluntary end to it. In the event of the local's failure to comply, the international president may appoint upon approval of the executive board a trustee to take over the affairs of the local, the trusteeship to continue subject to the approval of the executive board at its consecutive meetings.

Whether or not the procedural requirements of the IWA constitution were met necessitates the recounting of the sequence of events prior to the establishment of the trusteeship, some of them having been mentioned briefly above in the résumé of Masonite's defenses. Following a succession of bargaining agreements between Masonite and IWA for and on behalf of Local 5–443 since 1946, they again entered into a bargaining agreement effective for three years from March 3, 1967. This agreement, in Article 23, provided that at no time during its full term shall the union or any of its members authorize or engage in any strike, walk-out or other type of work stoppage. This agreement was signed on behalf of IWA by ten individuals, among them, J. D. Jolly, plaintiff here, who was the president of the local and a member of the international executive board, and plaintiffs John A. West and Herbert H. Ishee.

Section 17 of Article VIII of standard local union by-laws, being a part of the international constitution and adopted by Local 5–443, provides that no strike may be called except with the approval of a majority of the votes cast by the membership. This in turn pre-supposed a 5 step grievance procedure outlined in the bargaining agreement.

On April 21, 1967, all of Masonite's production and maintenance employees, over 2000, went on strike. It does not appear that a vote of the membership was taken on this measure. On April 24, 1967, A. F. Hartung, then IWA president, upon being notified of the strike, sent Jolly a telegram directing the local to comply with the contract. No compliance resulted, by vote of the membership, grievance procedure, or a return to work. On April 25, 1967, Masonite sued IWA and Local 5–443 under Section 301 of the National Labor Relations Act for $25,000.00 damages for each day of the strike, Civil Action No. 2183 on the docket of this Court. On May 1, 1967, in Cause No. 21,703, styled "Masonite Corporation v. IWA, et al," on the docket of the Chancery Court, Second Judicial District, Jones County, Mississippi, an injunction issued enjoining IWA, Local 5–443 and their officers and agents, among them Jolly and West, from engaging in the strike. The strike continued. On May 4, 1967 Masonite filed a petition for citation of contempt against the defendants to the injunction suit and other individuals. On the failure of the strikers to return to work, a civil contempt was ultimately adjudicated by the Mississippi Supreme Court, Masonite Corp. v. International Woodworkers of America, etc., 206 So. 2d 171, against IWA, the local, and 5 individuals who were signatory to the contract, including Jolly and West.

Also in May 1967, IWA and the local filed with NLRB an unfair labor practice charge against Masonite on which the Regional Director, in a letter dated June 30, 1967, refused to issue a complaint, his investigation disclosing that certain changes in working procedures by Masonite were neither in derogation of its bargaining obligations nor contrary to the provisions of the bargaining agreement, and, moreover, the strike that followed in violation of the agreement was an unprotected activity within the meaning of the National Labor Relations Act. A copy of this letter was sent to Jolly.

In the same month, May 29, 1967, Masonite filed a complaint with NLRB. The matter was fully heard by an NLRB

trial examiner, who on November 15, 1967, issued a comprehensive 18 page, single spaced, typewritten decision, finding IWA, the local, and its officers and agents guilty of unfair labor practices, and ordering them to cease and desist from causing or threatening to cause physical harm and property damage. The trial examiner particularly found that President Jolly, Vice President Sellers, and Financial Secretary Ishee, all local officers, knew that the strike was going to start and either encouraged it or did nothing to prevent it. Violence flared from the first day of the strike. Employees were beaten, and night riders shot into employees' homes. Vehicles were rocked and roofing nails thrown into the streets. Utility lines were dynamited. The violence reached its high point when a young unarmed plant security guard was shot and killed. On October 30, 1968, the Regional Director of NLRB, by letter addressed to plaintiffs' present counsel, again refused to issue a complaint for unfair labor practices against Masonite, saying that as the strike was unprotected Masonite was free to refuse re-employment to any striking employees.

As to compliance with the requirements of the constitution and by-laws, as soon as the strike was known to IWA, its president, Hartung, wired the local to comply with the no-strike provisions of the contract. On July 17, 1967, the attorney for IWA wrote to international president Hartung, local president Jolly, regional counsel president J. L. Baughman, and E. K. Collins, an attorney for the local, that the legal interests of the membership would best be served by a return to work. Baughman went to Laurel on September 25, 1967, and made a written report to Hartung outlining charges that the local officers refused to hold a membership vote on ending the strike, and requesting that a trusteeship be invoked. As shown by affidavits, Ronald F. Roley, who succeeded Hartung as international president on November 28, 1967, made a personal investigation of the strike situation in Laurel on October 18 or 19, 1967, including consultation with local officers, from which, and from the Baughman report, he determined that the activities of the local and its officers with reference to the strike violated Article I, Section 5, Article V, Section 15, and Article VIII, Section 17 of the IWA constitution, and because of this conclusion and with the advice and consent of his executive board, he participated in negotiations with Masonite to end the strike. On this visit in Laurel, Jolly was told of a pending meeting between Masonite and IWA representatives for the purpose of settling the strike. In response to this statement as reflected by Jolly's own affidavit, he said: "I told them that the company would not talk to the local and that the thing would never be settled if someone did not start talking." In this same affidavit, Jolly admitted that he knew Baughman had requested a trusteeship.

Negotiation meetings proceeded between Masonite and IWA on October 20, November 15, November 24, December 3 and December 6, 1967, variously held in Laurel, Atlanta, Chicago, and San Francisco. A special IWA executive board meeting was called for November 28, 1967, which was attended by Jolly. The minutes reflect that the board authorized the international officers to resolve the strike at Laurel. At the request of Roley, the new president, Jolly was directed to convene a special meeting of the local executive board in New Orleans, Louisiana, on December 2, 1967 in order that the local might be informed of the status of negotiations with Masonite. This meeting was attended by Jolly, Granville Sellers, Audrey Holifield and Orange Herrington, each of whom denied by affidavit that the meeting was called for a hearing on the proposed trusteeship, yet Jolly's affidavit clearly reveals that it was discussed for he says in his affidavit: "We left the December 2 meeting with the understanding that there had been no definite decision to impose a trusteeship on the local. We were not given an opportunity to present

a case against the imposition of the trusteeship. I told Roley that we would not act as trustee for our own local and we could not say at that time whether we would assist an outside trustee."

Between negotiation meetings of December 3 and 6, 1967, IWA was successful in persuading Masonite to restore seniority to returning strikers, which Masonite, armed with NLRB decisions, had up until then refused to do, and the amended agreement was executed on December 6, 1967. Also the mutual withdrawal of all pending legal actions was · agreed upon. The international president, in order to enforce the agreement, noticed the local of the settlement and appointment of a trustee, effective the following day, December 7.

■ The Court finds that throughout the more than seven months' work stoppage, illegal as found by every court and administrative body who heard the issue, J. D. Jolly and the other local officers were advised repeatedly through written and oral communications from the international officers that the strike must be ended. If in all the communications and hearings occurring prior to the appointment of a trustee, there was no literal compliance with the international constitutional procedure for establishing a trusteeship, as plaintiffs contend, there was more than sufficient compliance with both the constitution and statutes thereafter. At the international executive board meeting next after the appointment of a trustee, held on March 27, 1968, which Jolly was notified of, and which he attended, and took part in, a full report of the trusteeship was made and ratified by the board, and its continuation approved, as it has at each consecutive board meeting thereafter, up through November 12, 1968. The Court finds on the basis of the facts recited above that there were numerous notices of the charges against the union, opportunities given for compliance, a valid appointment of a trustee which was later approved and ratified by the international executive board at a meeting which Jolly attended, all in compliance with the union's constitution and by-laws. The Court further finds that in compliance with the federal statutes, the trusteeship was established for a valid purpose, that of assuring the performance of collective bargaining agreements and in order to restore democratic procedures, and, further that such trusteeship became valid after a fair hearing and when it was ratified by the international executive board. Cf. Schonfeld v. Raftery, D.C., 271 F.Supp. 128, aff. 2 Cir., 381 F.2d 446; Local No. 2, Int. Bro. of Tel. Workers v. Int. Bro. of Tel. Workers, supra; and Sawyers v. Grand Lodge, Inter. Ass'n of Machinists, supra.

As to the invalidity of the trusteeship, the Court finds none of plaintiffs' positions well taken and finds plaintiffs have failed to show by clear and convincing proof that the trusteeship was not established or maintained for a lawful purpose.

■ As to the second issue, the validity of the settlement agreement of December 6, 1967, authorities are in agreement that bargaining contracts entered into in good faith by the certified bargaining agent on behalf of its local, in this case IWA on behalf of Local 5–443, are binding and valid. Local Union No. 12405, District 50, UMW v. Martin Marietta Corp., 7 Cir., 328 F.2d 945. Before the Court as an exhibit is a copy of an NLRB record showing that as of July 10, 1946, International Woodworkers of America, CIO, became the exclusive bargaining representative of Masonite's production and maintenance employees at the Laurel mill. By affidavit of James D. Robertson, Masonite's director of employee relations, there have been twelve successive bargaining agreements since 1946. The first three were executed by IWA; the next three by IWA "for and on behalf of Local 4–443 (sic)"; the last six by IWA "for and on behalf of Local 5–443." Over 2000 maintenance and production employees engaged in the strike on April 21, 1967. From April 21 to May 25, 1967, 108 employees returned to their jobs and were reinstated by Masonite. From May 25, 1967 through

August 9, 1967, 279 strikers were reinstated. Between August 9, and December 6, 1967, approximately 255 former employees were re-employed as new employees. Although every labor board decision upheld Masonite's right not to re-hire striking employees or restore their benefits because of the no-strike clause in the bargaining contract, under provisions of Section 5 of the settlement agreement of December 6, 1967, Masonite agreed to re-employ some who had participated in the strike, to restore to all returning former employees credit for previous service for purposes of determining eligibility for various benefits such as vacation and holiday pay, and participation in Masonite's pension plan and medical and life insurance. Since December 6, 1967, Masonite has re-employed 400 employees, and restored credit for past services to many. As part of the settlement agreement, Masonite agreed to withdraw pending unfair labor charges and joined with IWA and Local 5–443 to dismiss Masonite's damage suit, Civil Action No. 2183.

Plaintiffs contend that the December 6, 1967 agreement was negotiated and executed without the participation of the local's negotiation committee, unlike previous contracts which bore the signatures of local officers. Under the résumé of facts surrounding the negotiations leading up to the settlement agreement, it is clear that such local officers or members had wilfully refused to negotiate and would not have signed the agreement had they been offered the opportunity to do so. The agreement itself provides that the parties thereto "represent and certify that they have authority to bind their respective organizations to the terms of this agreement." For IWA and its local, Roley, the international president, signed. I find nothing in the constitution and by-laws which denies his authority. In view of the then pending trusteeship, consummated on the following day, it is doubtful that any of the plaintiffs or local officers could have bound either the IWA or the local to the terms of the agreement.

The Court denies plaintiffs' motion for summary judgment and grants the motions for summary judgment of IWA and Masonite to the degree requested.

An order may be drawn accordingly with costs assessed to plaintiffs.