**INTERNATIONAL CHEMICAL WORKERS UNION and its Local No. 900, Plaintiffs-Appellees,**

v.

**E. I. DU PONT DE NEMOURS & CO., Defendants-Appellants.**

No. 77–3234.

United States Court of Appeals, Fifth Circuit.

April 7, 1980.

Richard R. Brann, Cathy Lee Jordan, Houston, Tex., for defendants-appellants.

Chris Dixie, Houston, Tex., for Internat'l Chemical Workers.

Before GOLDBERG, FAY and ANDERSON, Circuit Judges.

GOLDBERG, Circuit Judge:

Plaintiffs, International Chemical Workers Union and its Local 900 (hereinafter collectively referred to as "Chemical Workers"), sought an order compelling arbitration of grievances which arose under a collective bargaining agreement between Local 15025 of the International Union of District 50, United Mine Workers of America, and the Houston Plant of defendant E. I. DuPont de Nemours and Company ("DuPont").[1] Jurisdiction was based on § 301 of the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 185 (West 1978).

DuPont's answer raised three defenses: that DeWalt's grievance had already been arbitrated, that neither plaintiff was a party to the collective bargaining agreement, and that all of the grievances were barred by laches. In response to DuPont's claim that neither plaintiff was the proper union to compel arbitration under the collective bargaining agreement, the United Steelworkers of America ("Steelworkers") moved to intervene as a plaintiff, alleging that if neither plaintiff was the proper party to compel arbitration, the Steelworkers, as successor union to District 50, was entitled to compel arbitration.[2] The Steelworkers' motion was granted.

The court below ordered DuPont to proceed to arbitration of the grievances and empowered the arbitrator to decide the issue of which union (the Chemical Workers or the Steelworkers) is the proper party to maintain the arbitration. DuPont appealed.

This would be a run-of-the-mill section 301 suit to compel arbitration under the arbitration clause of a collective bargaining agreement but for the fact that while their grievances were pending, Local 15025, the signatory to the agreement, lost its majority support and was ousted as collective bargaining representative through an N.L.R.B. election.[3] Local 15025 apparently no longer exists, and the Chemical Workers, the union which defeated Local 15025, seeks to prosecute the grievances.

---

1. The grievances concerned the discharges of three of DuPont's employees, Tim DeWalt, John Paul Whittaker and Thurman Wells.

2. After Local 15025 lost its majority status, *see infra*, District 50 merged with the Steelworkers. *See generally West Point-Pepperell, Inc. v. Textile Workers Union*, 559 F.2d 304 (5th Cir. 1977) (per curiam).

3. The election occurred in February, 1972, and the Chemical Workers was certified as the new representative on June 29, 1972.

We must decide whether the Chemical Workers is entitled to compel arbitration under the collective bargaining agreement signed by Local 15025. There are several possible theories on which the Chemical Workers' rights might be based.[4] First, the Chemical Workers could be entitled to compel arbitration under Local 15025's agreement merely because it has replaced Local 15025 as bargaining representative for the bargaining unit. Second, it could have been designated directly by Local 15025 as an agent for prosecuting grievances which arose under Local 15025's agreement. Third, it could have been designated by District 50 as agent for exercising District 50's rights. Under this third theory, an additional step would be necessary because Local 15025, not District 50, is signatory to the agreement. We would first have to determine whether District 50 had any rights to assign, and how these rights had been obtained. District 50's rights might have been obtained in either of two manners. First, District 50 might be entitled to compel arbitration under Local 15025's agreement merely because Local 15025 was a member local of District 50. Second, District 50 might have obtained Local 15025's rights by being appointed its agent, either by explicit appointment or by implication.

The primary difficulty in this case is that neither the judge below nor the Chemical Workers on appeal explicitly bases the Chemical Workers' rights on any of these theories. The trial court, without analysis, ordered arbitration and referred the choice of union to the arbitrator. The Chemical Workers cites *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), invokes the policies favoring broad readings of arbitration clauses, *see United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), and concludes that arbitration should be ordered. The Chemical Workers' brief is utterly unresponsive to DuPont's contention that the issue is *which* union has the right to compel arbitration.[5]

DuPont's brief principally attempts to refute the contention that District 50 is entitled to compel arbitration under Local 15025's collective bargaining agreement merely because District 50 is the international to which Local 15025 belonged. DuPont contends that the Chemical Workers, assignees of District 50's rights, have no greater rights than District 50: to wit, none.[6]

4. We express no opinion concerning the legal sufficiency of any of these theories by listing them here.

5. The only case cited by the Chemical Workers concerning its right to compel arbitration is *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). *Wiley* does not control us here, but concerns corporate successorships. The question in such cases is whether a reorganization of corporate structure undertaken by a corporation extinguishes the employer's obligations (and the employees' rights) under a collective bargaining agreement.

Here, DuPont did nothing. Rather, its employees chose to oust one collective bargaining representative and enlist another. An appropriate question would be whether it is fair to require the employer to arbitrate grievances under an expired collective bargaining agreement with a union which is either the employees' new collective bargaining representative or the designated agent of the old representative.

Neither side has briefed or argued this issue, and we therefore refuse to address it. Rather, we assume that DuPont is not complaining about any differences between Local 15025 (the union with which DuPont negotiated the collective bargaining agreement) and the Chemical Workers (the union which claims to have been assigned Local 15025's rights) which would make it unjust to allow an assignment of these rights. *See generally* J. Calamari & J. Perillo, Contracts §§ 18–7 to 18–10 (2d ed. 1977).

6. DuPont relies heavily on *Local 12405, District 50, UMW v. Martin Marietta Corp.*, 328 F.2d 945 (7th Cir. 1964), *cert. denied*, 379 U.S. 880, 85 S.Ct. 147, 13 L.Ed.2d 87 (1965), for the proposition that a non-signatory to a collective bargaining agreement has no rights *merely* because its local or international is a signatory. *See District 100, International Association of Machinists and Aerospace Workers v. Compagnie Nationale Air France*, 414 F.Supp. 538, 542 (E.D.N.Y.1976). We need not decide whether we would follow these cases, since we find for the Chemical Workers on other grounds.

We base our decision today on an alternate theory: that the source of District 50's rights is by implicit assignment from Local 15025. DuPont's only contention directed at this theory is that any such assignment is not sufficiently pleaded or documented.[7]

DuPont claims that the Chemical Workers neither alleged nor proved that District 50 ever was assigned or succeeded to the rights of Local 15025. We agree with DuPont that the Chemical Workers has proceeded less than artfully here. However, it appears that DuPont never made much of the fact that Local 15025 and District 50 are distinct unions until it decided to attempt to delay or avoid the arbitrations at issue here.

By letter dated January 5, 1973, Salvatore J. Falletta, Assistant Legal Counsel for the Chemical Workers, informed DuPont that the Chemical Workers had been appointed agent of the prior union[8] for processing grievances. In its response to this letter, DuPont did not challenge the Chemical Workers' authority as agent or seek documentation of its authority, but resisted arbitration on the ground that the grievance proceeding had already been terminated.[9] DuPont has never provided a hint of a reason to doubt that the Chemical Workers is in fact the authorized agent of Local 15025. *Cf. Amoco Production Co. v. N.L.R.B.*, 613 F.2d 107 (5th Cir. 1980) (employer disputes that one union is successor of another). The Chemical Workers' claim in its brief that District 50 took over the operations of Local 15025 after the local's defeat by the Chemical Workers as bargaining agent, *see* Brief for Appellee at 11–12, is consistent with the evidence in the record

and is not disputed by DuPont. DuPont certainly was aware that the Chemical Workers ousted Local 15025 as bargaining agent. Thus, DuPont cannot claim that it was surprised by the Chemical Workers' attempts to arbitrate, and it does not point to any unfairness in allowing the Chemical Workers to proceed. *See* n. 5, *supra*.

It would be unfair to allow a technical pleading deficiency to defeat the rights of the affected employees to have their grievances arbitrated where, as here, the pleading unarguably put DuPont on notice that the Chemical Workers claimed authority as the designated agent of another union.[10] "The Federal Rules [of Civil Procedure] reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). This is especially true in a case like this one in which we must consider the policies favoring arbitration, *see United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Local 1*, 611 F.2d 580 (5th Cir. 1980), and the rights of the affected employees to have their disputes arbitrated if their union agrees to proceed.[11]

---

**7.** As noted *supra* p. 189, the theory involves two assignments of rights: from Local 15025 to District 50, then from District 50 to the Chemical Workers. DuPont does not appear to seriously dispute the second of these steps, nor could it. The complaint clearly alleges that District 50 designated the Chemical Workers as its alter ego and representative, *see* n. 10 *infra*, and there is record evidence to support the allegation.

**8.** The letter does not specify the identity of the prior union.

**9.** See n. 11, *infra*.

**10.** The amended complaint alleges that "District 50 . . . designated Plaintiffs as its alter ego and representative to process all grievances which were pending as of the date of certification through the grievance procedure, and, if necessary, through arbitration."

**11.** DuPont hints that it may be unfair to compel it to arbitrate with the Chemical Workers because DuPont is being faced with inconsistent demands. The alleged inconsistency stems from a letter dated November 16, 1972 to the American Arbitration Association from A. W. Hammons, Local 15025's arbitration representative, stating that, as far as Local 15025 was

Since the Steelworkers do not dispute that the Chemical Workers rather than the Steelworkers is the proper union to compel arbitration here, we need not decide whether there are any circumstances under which a court should submit to the arbitrator the question of which of several unions is the proper party to compel arbitration.[12] Because the court below ordered the choice between the Chemical Workers and the Steelworkers to be submitted to the arbitrator, we must vacate its judgment in part and remand with instructions to enter an order requiring DuPont to proceed to arbitration with the Chemical Workers of the three grievances.[13]

VACATED in part and REMANDED.

concerned, the DeWalt grievance case was closed. DuPont contends that attempts by a different union to reopen this grievance are inconsistent with the policy of allowing the workers' chosen bargaining representative to decide which grievances to pursue. If Local 15025 had continued to take the position that the DeWalt grievance had been terminated, this argument might have merit. *Cf. Local 12405, District 50, UMW v. Martin Marietta Corp.*, 328 F.2d 945 (7th Cir. 1964), *cert. denied*, 379 U.S. 880, 85 S.Ct. 147, 13 L.Ed.2d 87 (1965) (one union sought to compel arbitration of grievance, another was still negotiating with employer). However, on April 3, 1973, Mr. Hammons wrote another letter to the American Arbitration Association stating that he "had no authority to close the file, on behalf of District 50 in regards to matters of representation for employees formerly represented by Local Union 15025." Further, he said, "I hereby withdraw my letter [of November 16, 1972] and ask that it be disregarded."

We express no opinion on the effect of either of these two letters. Whether A. W. Hammons had authority to close the grievance on Novem-

ber 16, 1972 and the effect of his later attempt to countermand the termination are questions to be decided by the arbitrator. *See* n. 13, *infra.*

12. In most circumstances, we would doubt that the parties would intend that this issue be decided by an arbitrator. Whether the parties so intend is ordinarily a question a court must decide before arbitration can be ordered. *See Warrior & Gulf Navigation Co., supra*, 363 U.S. at 582, 80 S.Ct. at 1352; *Piggly Wiggly, supra*, 611 F.2d at 583–584; *Alabama Power Co. v. Local 391, I.B.E.W.*, 612 F.2d 960 (5th Cir. 1980) (per curiam).

13. We express no opinion on the merits of DuPont's procedural claims that the grievances have already been arbitrated to conclusion or are barred by laches. DuPont has not contended that these questions were excluded from the arbitration clause in the collective bargaining agreement. Accordingly, these are questions for the arbitrator to decide. *See Operating Engineers Local 150 v. Flair Builders, Inc.*, 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972).